BAILEY LUMBER COMPANY, Appellant,

v.

OHIO DEPARTMENT OF NATURAL RESOURCES et al., Appellees.

[Cite as *Bailey Lumber Co. v. Ohio Dept. of Natural Resources* (1992), 79 Ohio App.3d 434.]

Court of Appeals of Ohio,
Franklin County.

No. 91AP–1074.

Decided April 30, 1992.

*Rand, Gurley, Hanahan & Lyons* and *James M. Lyons,* for appellant.

*Lee Fisher,* Attorney General, and *Peter D. Patitsas,* Assistant Attorney General, for appellee Ohio Department of Development.

*Lee Fisher,* Attorney General, and *Teri Jo Ravetto,* Assistant Attorney General, for appellee Ohio Department of Natural Resources.

BOWMAN, Judge.

In July 1990, appellant, Bailey Lumber Company, initiated this action in the Ohio Court of Claims, seeking recovery based upon a sworn statement for a lien on funds payable to a contractor for public work. Appellant's claim arose out of its agreement to supply materials necessary for the performance by the Quintana Construction Company ("Quintana") of a contract with the Ohio Department of Natural Resources ("ODNR") to build a concession stand at Lake Pymatuning State Park. Appellee, the Ohio Department of Development, acted as a surety on the contract pursuant to R.C. 122.89, which grants appellee authority to execute construction contract bonds as a surety for minority contractors.[1]

In December 1988, appellant began supplying materials to Quintana for the construction project. Appellant supplied a total of $6,443.19 worth of lumber, for which Quintana paid $2,581.76. However, problems subsequently developed between Quintana and ODNR and the project came to a halt. When appellant sought payment of the balance owed, Quintana referred appellant to

---

1. Although ODNR was a party to the proceedings in the Court of Claims and is listed as an appellee, appellant has not raised any issue as to it in this appeal.

appellee as surety. In April 1989, appellant filed a "sworn statement for lien on funds payable to a contractor for contract work" pursuant to R.C. Chapter 1311, and sent copies to all parties advising that, if Quintana did not object to. the sworn statement within ten days, by operation of statute the correctness of the statement would be assented to by Quintana. No objection was filed.

In a separate unrelated action in May 1990, Quintana filed a complaint in the Court of Claims against ODNR and appellee, contending that the construction contract had been wrongfully terminated by ODNR and that Quintana was entitled to damages. Appellant was not a party to that action. In February 1991, the court in that action adopted a referee's report which determined that, although the contract at issue had been wrongfully terminated, the evidence nevertheless demonstrated serious deficiencies in the quality of construction. *Quintana Constr. Co. v. Ohio Dept. of Natural Resources* (1991), 62 Ohio Misc.2d 168, 594 N.E.2d 177. The referee further found that, although Quintana was not given an opportunity to remedy the deficiencies, if Quintana could not have provided adequate assurance that problems would be remedied, ODNR could have terminated the contract. The referee concluded that the evidence was insufficient to award Quintana monetary damages for the wrongful termination under a contract theory, but that Quintana had nevertheless suffered damage in that the wrongful termination had required appellee, Ohio Department of Development, to be prematurely called upon to finance completion of the project. The referee then determined that, because the termination by ODNR had been improper, ODNR's bonding claim was also improper and should be nullified, which would thereby nullify any action upon the indemnification agreement between Quintana and the Ohio Department of Development. The trial court adopted the referee's proposal that ODNR take whatever action with the building it deemed to be in its best interest, that Quintana be permitted to retain the funds paid to it by ODNR without having to perform additional work, that neither party have further rights to enforce, or obligations to perform, under the contract, and that ODNR's claim against the bonding agency prior to the wrongful termination be denied.

In this case, appellant's action to recover from the Department of Development, as surety, the balance due to appellant from Quintana resulted in summary judgment for ODNR and appellee. The trial court found that R.C. 122.88(B) permitted appellee to pay only upon the occurrence of a default in performance of the contract. Since the court had determined in *Quintana* that Quintana had not defaulted on its contract with ODNR, the court concluded that appellee was not obligated to indemnify appellant's claim.

Appellant now raises one assignment of error:

"The trial court erred as a matter of law when it granted summary judgment for defendant, State of Ohio Department of Development because Revised Code Section 122.88(B) does not limit or define the right of beneficial obligees to recover on surety construction bonds that have been issued by the Department of Development pursuant to the minority bonding program."

■ Summary judgment is proper only where the trial court, construing the facts in a light most favorable to the nonmovant, determines that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 74, 375 N.E.2d 46, 47.

R.C. 122.87 to 122.89 create a minority contractors bonding program under which the Ohio Department of Development acts as a surety to contractors meeting the qualifications set forth in R.C. 123.151(B). See R.C. 122.89; R.C. 122.87(B). Under R.C. 122.89(A), appellee has all the rights and powers of a company authorized by the Department of Insurance to execute construction bonds as a surety. R.C. 122.88(B) provides as follows:

"Any claims against the state arising from defaults shall be payable from the minority contractors bonding program administrative and loss reserve fund as provided in division (C) of this section or from the minority contractors bonding fund. * * * "

The Court of Claims found that the statute's use of the term "defaults" indicates that only where the contractor defaults in performance of the construction contract will the state's surety obligation be invoked. Thus, since the *Quintana* court concluded that there was no default, appellant cannot recover on a claim against appellee. However, we find this interpretation of the word "default" to be too narrow.

Appellant argues that it met the requirements of R.C. 153.56 and was, therefore, entitled to collect under the bond. That statute provides, in part:

"Any person to whom any money is due for * * * materials furnished in the construction * * * of any public building * * * as provided in section 153.54 of the Revised Code, at any time after * * * furnishing the materials, * * * shall furnish the sureties on the bond, a statement of the amount due to the person.

" * * * If the indebtedness is not paid in full at the expiration of * * * sixty days, the person may bring an action in his own name upon the bond, as provided in sections 2307.06 and 2307.07 of the Revised Code * * *."

R.C. 153.57 requires the bond to indicate that, if the principal "shall pay all lawful claims of subcontractors, materialmen, and laborers, for labor per-

formed and materials furnished in the carrying forward, performing, or completing of said contract," then the obligation under the bond shall be void. However, the bond also must state that, if the principal does not do these things, the bond "shall remain in full force and effect." The bond issued on behalf of Quintana as principal by the Department of Development states in pertinent part:

"IF THE SAID Principal shall well and faithfully perform each and every condition of such contract; and indemnify the Obligee against all damage suffered by failure to perform such contract according to the provisions thereof and in accordance with the plans, details, specifications, and bills of material therefor; and shall pay all lawful claims of subcontractors, material-men, and laborers, for labor performed and materials furnished in the carrying forward, performing, or completing of said contract; we agreeing and assenting that this undertaking shall be for the benefit of any materialman or laborer having a just claim, as well as for the Obligee herein; then this obligation shall be void; otherwise the same shall remain in full force and effect; it being expressly understood and agreed that the liability of the Surety for any and all claims hereunder shall in no event exceed the penal amount of this obligation as herein stated."

■ Thus, pursuant to the terms of the contract bond as required by R.C. Chapter 153, where the principal does not pay all lawful claims of material-men, the surety is obligated to do so. Interpreting R.C. 122.88(B) in light of R.C. 153.57, we find the word "default" to include a situation where the principal does not "pay all lawful claims of materialmen," regardless of whether the principal defaults on its contract with the state. So long as the subcontractor or materialman demonstrates the existence of a lawful claim in accordance with the appropriate statutes, the surety must indemnify the principal.

In *United States Fid. & Guar. Co. v. Allied Products Co.* (1933), 45 Ohio App. 270, 277, 187 N.E. 83, 85, the court stated that:

" * * * Generally speaking, a suretyship contract for the performance of public work, which under the law is operative for the benefit and protection of laborers, mechanics, and materialmen, will be effective for their protection regardless of changes and alterations subsequently made between the princi-pal contractor and the other contracting party, even though the same are made without the knowledge and consent of the surety on the contractor's bond. This is so because the laborers, mechanics, and materialmen have no control of the actions of the contracting parties."

Thus, regardless of whether Quintana performed its contract with the state, or whether the failure to perform the contract was deemed a "default," appellant was entitled to payment from the surety for materials supplied.

█ This result protects the apparent purpose of the minority contractors bonding fund, which is to assist minority contractors in obtaining and performing public works contracts. Denying recovery to a supplier of materials in this situation would have the effect of discouraging materialmen from contracting with minority contractors, since few would assume the risk of the state's refusal to indemnify. Therefore, we hold that, under R.C. 122.87 to 122.89, the state's obligation to pay any claims arising from defaults includes a situation where a minority contractor has defaulted on its obligation to pay subcontractors, laborers, or materialmen so long as there is a demonstration of compliance with R.C. Chapter 153.

We find the trial court erred in determining there was no genuine issue of material fact and that appellee was entitled to judgment as a matter of law, and appellant's assignment of error is sustained. The judgment of the trial court is reversed, and this cause is remanded for further proceedings in accordance with the opinion rendered herein.

*Judgment reversed*
*and cause remanded.*

DESHLER and REILLY, JJ., concur.

ARCHER E. REILLY, J., retired, of the Tenth Appellate District, was assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.